<u>**NOT FOR PUBLICATION**</u> _____ [Dkt. No. 49]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FRANK MARINO, | |
| Plaintiff, | |
| v. | Civil No. 05-4528 (RMB) |
| ADAMAR OF JERSEY, INC., | **AMENDED OPINION** |
| Defendant. | |

This matter comes before the Court upon a motion by Defendant, Adamar of New Jersey, Inc., d/b/a Tropicana Casino and Resort ("Defendant" or "Tropicana"), for summary judgment in the above-captioned matter. For the reasons set forth below, Tropicana's motion for summary judgment will be granted.

**Factual and Procedural Background**[1]:

Plaintiff Frank Marino ("Plaintiff" or "Marino") was employed by Tropicana from November 2, 1981, to September 17,

_____

[1] The facts are derived from the Defendant's statement of material facts section of its brief, and Plaintiff's counter-statements of facts contained in his brief. The Court notes for the record that Local Rule 56.1 provides that "[o]n motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." Facts in a submitted statement of material facts which are not contested are deemed admitted. <u>See</u> <u>Hill v. Algor</u>, 85 F. Supp. 2d 391, 408 n.6 (D.N.J. 2000).

2003.  At the time of his termination, Plaintiff worked as a Floorperson in Tropicana's Table Games Department, consisting of Boxpersons and Floorpersons.  Tropicana alleges that because it faced mounting financial challenges and difficulties, it had to reduce its force in the Games Department.  Tropicana determined that it could reduce payroll without impacting operations by reducing Boxpersons by six, and Floorpersons by four.  Tropicana also determined that one pit boss could be eliminated because of changes on grave shift.  (Tropicana Memorandum (Def. Motion, Ex. C) at 1).  Plaintiff was part of that reduction in force.

Tropicana alleges that the individuals selected for layoff were determined by the application of a formula weighing four different criteria: management performance review; time and attendance; total disciplinary action notices; and the individual's last annual evaluation.  Points and percentages were assigned and a spreadsheet was prepared with a total score for each individual.  The lowest scoring individuals in each position were then selected for lay off.  (Id.).  Plaintiff was the fourth lowest Floorperson and, thus, he was terminated on September 13, 2003.

Plaintiff, who was diagnosed with Hepatitis C in 1991 and had taken medical leaves for complications associated with his medical condition, argues that Defendant intentionally used a formula that would target older and disabled workers for

2

termination.  By using a formula that relied heavily on time and attendance, Plaintiff argues, Defendant succeeded in terminating employees who used more sick time because of disabilities or advanced age.

On September 16, 2005, Plaintiff filed his Complaint in this Court alleging that Defendant discriminated against him because of his (1) age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and (2) disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA").  Plaintiff also brought related state claims pursuant to the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, et seq. ("NJLAD").[2]

Prior to filing his Complaint in this Court, however, Plaintiff had applied for social security disability benefits with the Social Security Administration ("SSA").  On March 21, 2006, the SSA determined that Plaintiff was disabled as of September 17, 2003.

Defendant filed this motion for summary judgment on August 28, 3008 [Dkt. Nos. 47, 49]; Plaintiff filed an opposition on October 6, 2008 [Dkt. Nos. 57, 58]; and Defendant filed a reply

---

[2] On August 27, 2008, Plaintiff voluntarily dismissed his claims arising under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq., as well as his claim of retaliation based upon his May 1998 complaint of discrimination.  [See Dkt. No. 48].

on October 14, 2008 [Dkt. No. 60].[3]  The Court held oral argument

on October 29, 2008.  Thereafter, upon direction of the Court,

Plaintiff filed a supplemental brief on November 14, 2008 [Dkt.

No. 72] and Defendant filed a response on November 23, 2008 [Dkt.

No. 73].

**Standard for Summary Judgment:**

Summary judgment is appropriate when the materials of record

"show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of

law."[4]  Fed. R. Civ. P. 56(c).  In deciding whether there is a

disputed issue of material fact, the court must view the evidence

in favor of the non-moving party by extending any reasonable

favorable inference to that party; in other words, "the nonmoving

---

[3] Both Defendant and Plaintiff filed exhibits in support of their papers without any declaration as to their authenticity, as required by Fed. R. Civ. P. 56(e)(1).  See, e.g., Federal Procedure, Lawyers Edition § 62:662 (Sept. 2008) ("Fed. R. Civ. P. 56(e)(1) requires that ... exhibits and documents, like affidavits, must satisfy the requirement that they be made on personal knowledge, sworn, certified, and show affirmatively the creator's competence to offer evidence.  Documents or exhibits should therefore be authenticated by affidavit or by some other means of certification.") (emphasis added).

[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[5]  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).


A.  **Disability Discrimination**

The Court turns, first, to Plaintiff's claims of disability discrimination.  To establish a prima facie case of discrimination under the ADA and NJLAD, a plaintiff must show:

> "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."

Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (quoting Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir.

---

[5] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

5

1998)).[6]  The parties do not dispute that Plaintiff has satisfied the first and third factors; thus, the issue in this case centers on the second factor – that is, whether Plaintiff was otherwise qualified to perform the essential functions of the job.  In examining this issue, the Court must first determine whether Plaintiff should be judicially estopped from claiming he was qualified to work on September 17, 2003 because of his prior statements to the SSA that he was disabled as of September 17, 2003.

The procedural history is as follows.  On September 30, 2004, about one year after his termination from Tropicana, Plaintiff applied for social security disability insurance benefits from the SSA.  (See Application for Disability Insurance Benefits ("SSA Application") (Pl. Aff., Ex. A); see also Pl. Aff. ¶ 8).  In his application, Plaintiff affirmed, under penalty of perjury, that he "became unable to work because of [his] disabling condition on September 17, 2003."  (SSA Application at PAGE 1).  Sometime in April 2005, the SSA denied Plaintiff's

---

[6] The Court notes that both parties inaccurately stated that Plaintiff must also satisfy a fourth factor to set forth a prima facie case under the ADA – a comparative element.  (See Def. Motion at 10 (stating that Plaintiff must show that "he was replaced by someone of equal or less qualifications and of a non-protected class..."); Pl. Opp. at 6 (stating that Plaintiff must show that "non-disabled individuals were retained by Defendant after the alleged reduction-in-force")).  As stated in Taylor and Gaul, for purposes of an ADA claim, such comparative element is not part of the prima facie showing Plaintiff must make.

application.  (Pl. Aff. ¶ 13).  Plaintiff then filed this federal
lawsuit on September 16, 2005, alleging, <u>inter alia</u>, disability
discrimination.  [Dkt. No. 1].  Less than two months later, on
November 11, 2005, Plaintiff appealed the SSA's denial of
benefits.  (<u>See</u> Disability Report - Appeal (Pl. Opp., Ex. I); Pl.
Aff. ¶ 13).  At no time during his appeal did Plaintiff alter his
prior sworn statement to the SSA relating to his September 17,
2003 alleged onset of disability.  On March 21, 2006, the SSA
determined that "[b]ased on the application for a Period of
Disability and Disability Insurance Benefits filed on September
30, 2004, the claimant is 'disabled' under sections 216(I) and
223(d) beginning on September 17, 2003, (<u>i.e., the alleged onset</u>
<u>date</u>)."  (SSA Order, dated March 21, 2006 (Def. Motion, Ex. G) at
8 (emphasis added)).

     As reflected throughout the SSA Order, the administrative
law judge ("ALJ") made the disability determination based upon an
alleged onset date of September 17, 2003.  First, the ALJ
described Plaintiff's medical condition prior to September 2003:

          The record reflects that the claimant has a
          history of chronic back pain status post several
          surgeries, diverticulitis, hepatitis C since 1976
          (diagnosed in 1991), cirrhosis with steatosis,
          esophageal varices, intermittent encephalopathy,
          thrombocytopenia, migraine headaches and
          hypertension.  In October 2000, an MRI of the
          lumbar spine showed status post discectomies (sic)
          and fusions [], laminectomies [], postpoerative
          changes [], spinal stenosis [], and disc
          protrusion [].  In July 2003, Kenneth S. Schwab,
          M.D., the claimant's treating gastroenterologist

7

and liver specialist, referred him for orthotopic
liver transplant evaluation.

(SSA Order at 4).  The ALJ then examined the Plaintiff's
subsequent medical history.  (Id. at 4-6).  After considering all
of this medical evidence, the ALJ found that Plaintiff was under
a disability beginning on September 17, 2003, the alleged onset
date.  As a result of the SSA decision, Plaintiff was awarded
benefits by the SSA, and the calculation of his benefits was
derived using the September 17, 2003 date.[7]

Given the SSA's determination that Plaintiff was disabled as
of September 17, 2003, the question now is whether Plaintiff
should be judicially estopped from arguing that he was not
disabled on September 17, 2003, the day his employment was
terminated.  "'Judicial estoppel' is a judge-made doctrine that
seeks to prevent a litigant from asserting a position
inconsistent with one that he or she has previously asserted in
the same or previous proceeding."  Lincoln v. Momentum Systems,
Ltd., 86 F.Supp. 2d 421, 427 (D.N.J. 2000) (internal quotation

---

[7] Although the ALJ ruled that Plaintiff's onset date of
disability was September 17, 2003, the Social Security Act
provides that an individual who is awarded benefits is only
entitled to such benefits beginning in the first month after a
"waiting period" of five months since the established onset date.
42 U.S.C. § 423(c)(2) (defining waiting period as "the earliest
period of five consecutive calendar months throughout which the
individual with respect to whom such application is filed has
been under a disability").  Thus, Plaintiff's waiting period
would have expired on March 17, 2004, five months after his onset
date, and he would be entitled to benefits beginning in April
2004.

8

omitted).  In essence, it is a rule designed to prevent a
litigant from playing "fast and loose" with the Court.  "Summary
judgment is appropriate when operation of judicial estoppel
renders a litigant unable to state a prima facie case."  Montrose
Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 779
(3d Cir. 2001).

During oral argument in this matter, the Court addressed
the issue of judicial estoppel that had been raised by the
Defendant.  Specifically, the Court expressed its concerns that
the Plaintiff had previously represented under oath to the SSA,
for purposes of receiving disability benefits, that he was fully
disabled as of September 17, 2003, yet now he appears to claim,
for purposes of his disability discrimination lawsuit, that he
was not disabled on September 17, 2003.  Indeed, the record shows
that Plaintiff acknowledged as much in his deposition testimony:

> Q:   ... Mr. Marino, you just testified under oath that
>      you were able to perform your job as of the time
>      of your termination.  But you swore to the Social
>      Security Administration, did you not, that as of
>      September 17th, 2003, that you were disabled and
>      unable to perform the functions of your job; isn't
>      that correct?
>
> A:   That's correct.

(Pl. Dep. Part II (Pl. Opp., Ex. L), 61:4-11)).

As the law requires, the Court gave Plaintiff an opportunity
to provide an explanation for this apparent contradiction.  See
Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806

(1999) ("a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case - at least if she does not offer a sufficient explanation.  For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.  Rather, <u>she must proffer a sufficient explanation</u>.") (emphasis added).

In response to the Court's queries, on November 14, 2008, Plaintiff filed an affidavit and supplemental brief in which he proffered his explanation for the inconsistency as to his disability onset date.  In this submission, Plaintiff makes two points.  First, he argues that the termination occurred at the time the termination decision was made by management, not at the time he was informed of the decision.  Because the decision was made <u>prior</u> to September 17, 2003, as evidenced by internal corporate documents revealing discussions and the like[8], Plaintiff contends he was not disabled at the time he was terminated.  Second, Plaintiff argues that "it was the termination that he believes caused his condition to worsen, rendering him unable to work."  (Pl. Supp. Br. at 8).  In

---

[8] Plaintiff relies upon the deposition testimony of Dawn Clayton, who testified that Plaintiff was terminated only after a severance package was prepared and a date was set to inform Plaintiff of his termination.  (<u>See</u> Pl. Opp., Ex. M).

Plaintiff's words, the termination "sucked the life out of me, I was crushed" and "it was the events of that day that caused me to become unable to work."  (Pl. Aff. ¶¶ 7, 10).

To overcome summary judgment, Plaintiff's "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier [SSA application] statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'"  Cleveland, 526 U.S. at 807.

Plaintiff's first argument is not legally sound.  While it is true that "[t]he determination of whether an individual with a disability is qualified is made at the time of the employment decision[,]" Gaul, 134 F.3d at 580, the law is clear that the "employment decision" occurs at the time that the decision was made and communicated to the employee.  Delaware State College v. Ricks, 449 U.S. 250, 258 (1980).  "An employer establishes its official position when it decides, unconditionally, to terminate an individual's employment and provides the employee with notice of the unconditional decision to terminate his ... employment."  Bailey v. United Airlines, 279 F.3d 194, 199 (3d Cir. 2002) (citing to Delaware State College) (emphasis added).  Any other rule would wreak havoc in attempting to ascertain with certainty

when the final employment decision was made.[9]

Plaintiff's second argument requires a more in-depth analysis. In his affidavit, Plaintiff offers the following explanation:

> [b]ecause of the nature of my disease, it is impossible to pinpoint an exact date on which I suddenly "became unable to work." However, the SSA required that my wife and I choose a date as part of the application. At the point when I applied, it had been over a year after my termination and I had not worked at all during that time. I was not sure how to determine on what date I became unable to work. I knew that I had been able to work for many years while suffering from Hepatitis C. I knew that I was able to work before I was terminated, and was even able to work the morning of September 17, 3003. It was only after my termination that my condition and depression worsened to the point that I became unable to work. Forced to choose, <u>I picked the date that I was told I was terminated because I believed, and continue to believe, that it was the events of that day that caused me to become unable to work</u>. It seemed like a fair date to pick because it was the last day that I had worked and prior to that date, I was able to work (and I have never stated otherwise).

(Pl. Aff. ¶ 10) (emphasis added). The Court interprets Plaintiff's argument to be that he was not unable to work the morning of September 17, 2003, but that Tropicana's discharge of him caused him to become depressed and unable to work later on that same day.

---

[9] The cases Plaintiff relies on are inapplicable here, as they stand for the rule that the determination of whether a disabled person is qualified is made at the time of the decision, <u>not at the time of the lawsuit</u>. (<u>See</u> Pl. Supp. Br. at 4). This Court's decision is not inconsistent with this rule; rather, it clarifies that the "employment decision" is deemed to occur when it is <u>communicated to the employee</u>.

This explanation stretches the Court's imagination. Plaintiff's medical condition, Hepatitis C, is a gradually deteriorating disease, as Plaintiff himself stated.  Yet the explanation he proffers requires the existence of a sudden change in his ability to work.  Were this a case in which Plaintiff suffered a sudden physical injury as a result of a severe car accident, for example, in the middle of the day, his explanation would be reasonable.  But that is not the case.  Here, to find Plaintiff's explanation for the contradiction in his statements to the SSA and this Court to be sufficient, a jury would have to believe that Plaintiff suffered a sudden onset of depression due to his termination and that such depression was so physically devastating as to render him suddenly unable to work.  Plaintiff has offered no evidence to support this theory beyond his own allegations and no reasonable jury could find this explanation sufficient.

Moreover, nowhere in his SSA application did Plaintiff state that he suffered from a sudden debilitating depression immediately upon his termination which caused him to become unable to work.  The only mention of depression in any of Plaintiff's SSA papers in the record is found in the SSA Order, which notes that in March of 2005 (one and a half years after his termination and six months after his SSA application was submitted), Dr. Lewis Lazarus diagnosed Plaintiff with

"adjustment disorder with depressed mood, chronic" after
Plaintiff reported that he had been "struggling to perform his
job responsibilities and was laid off work probably because of
poor attendance."  (SSA Order at 4-5).

        This situation is analogous to the one presented in Detz v.
Greiner Indus., Inc., 346 F.3d 109 (3d Cir. 2003).  In that case,
the plaintiff, who had been terminated from his employment,
submitted an SSA application claiming that he was unable to work
as of his termination date due to his disability.  Id. at 119.
His application was denied twice, but eventually he "convinced
the [SSA] agency, using statements of doctors to fortify his
initial assertions, that as of [his termination date], his
condition was severe enough to prevent him from performing any
work."  Id.  He was awarded benefits retroactively based on the
finding that he had become disabled on his termination date, as
he had alleged in his application.  Subsequently, the plaintiff
filed a federal discrimination lawsuit alleging violations of,
inter alia, the ADEA.  In support of his age discrimination
claim, the plaintiff argued that "it was not his physical
limitations, but rather the fact that [the defendant] laid him
off, that rendered him 'unable to work' as of [his termination
date]."  Id. at 119.  Specifically, he asserted that he was
disabled after his termination because "he was no longer allowed
to continue performing that job, and he would not be able to find

14

another job similarly tailored to his physical limitations." Id. at 114.

The District Court rejected the plaintiff's explanation, Detz v. Greiner Indus., Inc., 224 F.Supp.2d 905 (E.D. Pa. 2002), and the Third Circuit affirmed, finding the plaintiff's two assertions "patently inconsistent" and his proffered explanation insufficient to reconcile them. Detz, 346 F.3d at 120. As the Third Circuit explained, "the fatal flaw in this attempt by [plaintiff] to explain some consistency in his positions is that it ignores the statements he made repeatedly to the SSA regarding his disability." Id. at 120. Specifically, the record showed that, "nowhere on the SSDI paperwork did [plaintiff] note that he remained physically able to continue doing that job, or that it was his discharge that rendered him 'disabled.' Instead, he unambiguously indicated that his disability prevented him from working at all." Id. at 119. As the Court explained,

> [h]ad [plaintiff's] SSA application indicated that, while he could still perform [the particular job he had], his disability prevented him from obtaining most other jobs, we might view his later claim to be reconciled with his earlier assertions. But [plaintiff] indicated nothing of the sort when he described how his disability affected his work. Instead, [plaintiff] appears to have manipulated the facts and perhaps the system, to obtain SSDI benefits. He succeeded in convincing the agency to award benefits based on his first assertion, and his inability to adequately reconcile the patently inconsistent positions dooms his ability to pursue his ADEA claim.

Id. at 120-21. Consequently, the plaintiff was judicially

15

estopped from pursuing his discrimination claim.

In this case, the record shows that Plaintiff said nothing to the SSA about his termination causing a sudden onset of depression which rendered him unable to work. It is only now, in his pursuit of a discrimination lawsuit, that Plaintiff presents this reason for his disability. The Court is troubled by this after-the-fact explanation and cannot permit Plaintiff to play both sides – i.e., benefitting from the SSA based on his original statement and now benefitting from the Tropicana based on his current statement. Just as the plaintiff in Detz was estopped from asserting a new theory of disability for purposes of his lawsuit, Plaintiff here should also be estopped from espousing a new theory of disability, a theory which, the Court notes, is incredible in itself.[10]

To the extent Plaintiff intended to argue that he selected his termination date as the onset date for lack of a better alternative, such argument does not carry the day. The Court recognizes the inherent difficulty in pinpointing a precise date when his slowly degenerative disease reached the point that he became "unable to work." See, e.g., SSR 83-20, 1983-1991 Soc.

_____

[10] Were the Court to allow Plaintiff to proceed in his discrimination claim based on his proffered and unsupported explanation, any SSA claimant could succeed in obtaining both SSA benefits and discrimination damages by making the same post hoc argument - i.e., that his/her termination caused him/her to become depressed and, thus, unable to work. This Court refuses to condone such double-dealing.

16

Sec. Rep. Serv. 49, 1983 WL 31249 (stating that "with slowly
progressive impairments, it is sometimes impossible to obtain
medical evidence establishing the precise date an impairment
became disabling").  However, as one Court of Appeals noted,
"Cleveland does not stand for the proposition that [claimants]
should be allowed to explain why they gave false statements on
their SSDI applications..." Johnson v. Exxonmobil Corp., 426
F.3d 887, 892 (7th Cir. 2005); see also Opsteen v. Keller
Structures, Inc., 408 F.3d 390, 392 (7th Cir. 2005) (stating that
"contradictions are unacceptable: a person who applied for
disability benefits must live with the factual representations
made to obtain them, and if these show inability to do the job
then an ADA claim may be rejected without further inquiry")
(emphasis added).  Additionally, there is no evidence that
Plaintiff made any effort to correct his statement or clarify his
onset date in the SSA's records.

     Similarly, the Court is unpersuaded by Plaintiff's attempt
to blame the SSA for the alleged onset date.  In his affidavit,
Marino states that the "SSA apparently recorded September 17,
2003 as the date upon which I 'became unable to work.'"  (Marino
Aff. ¶ 9).  All reasonable inferences suggest that the SSA relied
upon information provided by Plaintiff.  Even if the SSA somehow
relied on this date in error, Marino admits that he received a
copy of this record shortly after he applied yet he never

17

disabused the SSA of this sworn statement.  Indeed, Plaintiff
remained silent as to any changes despite the fact that the
"receipt of claim" portion of his SSA application explicitly
directed him to review his application and correct any errors
within ten days: "Review your application to ensure we recorded
your statements correctly.  ...  If you disagree with any of your
statements, you should contact us within 10 days after the date
of this notice to let us know."  (SSA Application at PAGE 4).
The claim receipt also advised him that "if there is some other
change that may affect your claim, you ... should report the
change."  (Id.).  Moreover, even when Plaintiff filed this
lawsuit on September 16, 2005, alleging that he was not disabled
on September 17, 2003, he still never informed the SSA of the
change in facts in spite of the obvious inconsistency in his
theories.  Instead, he continued to pursue his earlier SSA claim
by filing an appeal less than two months later, thereby
perpetuating the contradiction.

        In conclusion, the doctrine of judicial estoppel focuses not
on Plaintiff's medical condition in fact but, rather, on
Plaintiff's conduct.  Here, Plaintiff's actions and documents
demonstrate that Plaintiff wanted the SSA to believe that he had
been disabled since September 17, 2003.  Ultimately his benefits
were calculated based on this onset date.  Yet now he insists
that he was able to work on that date.  The Court finds that

Plaintiff cannot be simultaneously unable to perform his job due to his disability (as represented to the SSA for purposes of collecting benefits) and at the same time able to perform the essential functions of his job (as represented to the Court for purposes of proving disability discrimination).  Plaintiff's argument that he was able to work in the beginning of the day, but he became totally disabled later in the day due to depression from his termination is unavailing.  Given the implausibility of Plaintiff's explanation and the sheer lack of any evidence to support it, this Court holds that no reasonable juror could find this explanation sufficient to reconcile Plaintiff's inconsistent statements.  Accordingly, Plaintiff is judicially estopped from bringing his disability claims under the ADA and NJLAD.[11]


B.   **Age Discrimination**

    With regard to his ADEA claim, in order to set forth a prima facie case of discrimination, Plaintiff must show that he (1) is a member of the protected class, _i.e._, at least 40 years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3)

---

    [11] In support of his position, Plaintiff relies upon Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999).  However, the facts in that case are easily distinguishable from those in the present case.  In Cleveland, the ADA plaintiff explained that although she was deemed "disabled" for purposes of her disability benefits claim, she could still perform her job with reasonable accommodation, which was necessary to prove her discrimination claim.  The present case does not involve the issue of reasonable accommodation.

suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination. Simpson v. Kay Jewelers Division of Sterling, Inc., 142 F.3d 639, 644, n.5 (3d Cir. 1998); see also Monaco v. American General Assurance Co., 359 F. 3d 296, 299 (3d Cir. 2004). In the case of a reduction in force, "the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." Anderson v. Consolidated Rail Corp., 297 F.3d 242, 250 (3d Cir. 2002).

There is no dispute here that Plaintiff satisfies the first and third prongs. Marino was over 40 at the time he was terminated and the decision to terminate his employment constituted an adverse action.

The parties do dispute the second prong - whether Plaintiff was qualified. Defendant presses its argument that Plaintiff should also be judicially estopped from showing that he was qualified in the age discrimination context because of his prior statement of disability to the SSA. Plaintiff disagrees, arguing that the term "qualified" refers to something different, such as a level of experience and qualifications, which, he argues, he possessed.

The Court agrees with Defendant's argument. As the Third Circuit has explained,

20

> [w]hile <u>Cleveland</u> only specifically addressed a
> conflict between SSDI and ADA claims, the analysis is
> not limited in its application to cases involving those
> particular statutory and administrative schemes.  ...
> [A] prima facie showing under the ADEA that conflicts
> with earlier statements made to the SSA is subject to
> the same analysis, as the reasoning of the Court in
> <u>Cleveland</u> also applies in the context of the ADEA.

<u>Detz</u>, 346 F.3d at 117.  Accordingly, for the same reasons

Plaintiff is judicially estopped from pursuing his ADA claim,

Plaintiff is also judicially estopped from pursuing his ADEA

claim.


**Conclusion:**

   For the reasons discussed above, Plaintiff is judicially

estopped from pursuing his discrimination claims under the ADA,

NJLAD and ADEA.  Defendant is entitled to summary judgment.  An

accompanying order shall issue this date.



Dated: <u> February 3, 2009 </u>      <u>s/Renée Marie Bumb         </u>
                                RENÉE MARIE BUMB
                                United States District Judge




21